**BROUGHTON OFFSHORE DRILLING, INC., et al., Plaintiffs–Appellants,**

v.

**SOUTH CENTRAL MACHINE, INC. and Charter Supply Company, Defendants–Appellees.**

No. 89–4773.

United States Court of Appeals, Fifth Circuit.

Sept. 14, 1990.

Frank X. Neuner, Jr., Susan Stagg Robinson, LaBorde & Neuner, Lafayette, La., for plaintiffs-appellants.

Walter K. Jamison, III, Jamison & Philipp, Lafayette, La., for South Central Machine, Inc.

Keith M. Borne, Gary P. Kraus, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., for Charter Supply Co.

Before WISDOM, DAVIS and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Broughton Offshore Drilling, Inc. invoked admiralty jurisdiction in its action against South Central Machine, Inc. and Charter Supply Company to recover for damage to its drilling barge. The district court dismissed for lack of admiralty jurisdiction and Broughton appeals. We reverse and remand.

## I.

Broughton Offshore Company, Inc. undertook an offshore drilling operation with one of its drilling barges, the Broughton II. As the barge was being set up on the site, two hydraulic cylinders holding up the rig's blowout preventer were broken. Broughton sent the broken cylinders to Charter Supply for repair. Charter Supply in turn engaged South Central Machine, Inc. to repair the rods.

The rods were returned and installed on the rig, but failed as the blowout preventer was being moved into position. The failure of the cylinders caused the blowout preventer, an extremely heavy piece of equipment, to fall into the Gulf of Mexico and to strike the drilling barge's buoyancy mat.

Recovery of the blowout preventer required an underwater salvage operation. Divers made makeshift repairs on the rig's buoyancy mat so that the rig could be safely moved. The drilling barge was then towed into port and placed in dry dock for full repairs.

Predicated on the court's admiralty jurisdiction, Broughton filed an action against Charter Supply and Central Marine for the damage caused by the failure of the rods. The district court, relying on this circuit's opinion in *Sohyde Drilling and Marine Company v. Coastal States Gas Producing Company*, 644 F.2d 1132 (5th Cir.1981), cert. denied, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981), dismissed the suit for lack of admiralty jurisdiction. This appeal followed.

## II.

The sole issue before the court is whether Broughton's claims have a suffi-

cient connection to traditional maritime activities to support admiralty tort jurisdiction. *See Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 673, 102 S.Ct. 2654, 2657, 73 L.Ed.2d 300, 305 (1982). In judging maritime nexus, this court usually considers four factors:

(i) the functions and roles of the parties;

(ii) the types of vehicles and instrumentalities involved;

(iii) the causation and type of injury; and

(iv) the traditional concepts of the role of admiralty law.

*Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir.1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).[1] The defendants, in this court as they did in the district court, rely heavily on two cases applying the *Kelly* factors: *Sohyde Drilling and Marine Company v. Coastal States Gas Producing Company*, 644 F.2d 1132 (5th Cir.1981), *cert. denied*, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981) and *Houston Oil and Minerals Corporation v. American International Tool Company*, 827 F.2d 1049 (5th Cir.1987), *cert. denied*, 484 U.S. 1067, 108 S.Ct. 1031, 98 L.Ed.2d 995 (1988). The question we must decide is whether *Sohyde* and *Houston Oil* control the outcome of this case.

In *Sohyde*, oil well operations were being conducted from a submersible drilling barge in a small, dead-end canal. A blowout occurred, and a suit was filed seeking recovery for property damage resulting from the blowout. The *Sohyde* court applied the *Kelly* factors and concluded the maritime nexus was inadequate to support admiralty jurisdiction. The court distinguished between claims for personal injury suffered on navigable waters, which it remarked would surely lie within admiralty jurisdiction, and the property claims before it, which the court concluded were outside admiralty jurisdiction.

Applying the four-factor *Kelly* analysis, the court noted that the functions and roles of the parties were closely tied to the production of oil and gas, not to maritime activities. The vehicles and instrumentalities, the court pointed out, were not particularly maritime, even though a submersible drilling barge was involved. The "causative factors," the court continued, "could just as easily have occurred on land," and the types of injury resulting from the blowout were "indistinguishable from those arising from land-based blowouts." As for the "traditional concept of the role of admiralty," the court noted that the accident involved only "a well blowout in a dead-end canal slip in Louisiana" and therefore did not implicate any federal interest in protecting maritime commerce. 644 F.2d 1136–37.

■ As far as the first two *Kelly* factors are concerned—the nature of the parties and type of equipment involved—this case is closely analogous to *Sohyde*. As in *Sohyde*, the parties before us, an oil drilling concern and two land-based businesses, are not closely related to maritime commerce. Likewise, although the drilling barge and its buoyancy mat have a maritime function, several of the instrumentalities involved, such as the blowout preventer and the hydraulic rods, were not closely related to maritime commerce.

We find marked differences, however, between *Sohyde* and the instant case in the application of the third and fourth *Kelly* factors which persuade us that *Sohyde* does not control the outcome of this case. The damages in this case are intensely maritime in nature and could not easily have occurred in land-based operation. The injury was not merely to a wellhead and an oil and gas reservoir, but to the vessel itself. Recovery of the blowout preventer from the Gulf required an underwater salvage operation. The rig could not be safely towed to port until the damage to its buoyancy mat had been temporarily repaired. Full repairs could not be completed until the barge was placed in dry dock. In

---

**1.** In *Sisson v. Ruby*, ⸺ U.S. ⸺, ⸺ n. 4, 110 S.Ct. 2892, 2897 n. 4, 111 L.Ed.2d 292 (1990), the Supreme Court recognized the *Kelly* test as one approach to judging the maritime nexus. However, the Court neither approved nor disapproved of the *Kelly* approach. In the absence of further guidance from the Court, we will continue to follow the *Kelly* approach and our cases applying it.

short, the damage in *Sohyde* was to the reservoir of an oil well and the well head. Here, the damage was to a vessel.

Similarly, the situs of the accident in this case more clearly implicated federal maritime interests than did the *Sohyde* accident. While the *Sohyde* incident occurred at the end of a small, single purpose, dead-end canal, this accident occurred in the Gulf of Mexico, a body of water teeming with maritime activity.

The defendants also rely on our decision in *Houston Oil and Minerals Corporation v. American International Tool Company*, 827 F.2d 1049 (5th Cir.1987). In *Houston Oil*, a piece of drilling equipment called a "mud saver sump" failed, causing pipe suspended from the rig to fall into the well. All of the damage occurred to the drilling equipment or to the oil well; neither the drilling barge nor its flotation apparatus was damaged. This court, reluctantly following the *Sohyde* court's application of the *Kelly* factors, concluded that the maritime nexus was not sufficiently strong to support admiralty jurisdiction.

Again, the type of damage Broughton sustained distinguishes this case from *Houston Oil*. In the *Houston Oil* accident, an oil well and oil field equipment were damaged. Because of the accident, Houston Oil was required to partially re-drill a well. By contrast, the injury in today's case was to the drilling barge and its flotation apparatus, which, as noted, necessitated underwater operations, towing, and dry dock repairs.

The *Sohyde* decision has provoked criticism because its distinction between property damage and personal injury "invites the spectre of unwanted confusion with a potential for unjust results and a loss of uniformity admiralty law seeks to provide." *See Houston Oil and Minerals Corporation v. American International Tool Company*, 827 F.2d 1049, 1054 (5th Cir. 1987), *cert. denied sub nom. AMF Tuboscope, Inc. v. Houston Oil and Minerals*, 484 U.S. 1067, 108 S.Ct. 1031, 98 L.Ed.2d 995 (1988). Unless and until *Sohyde* is overruled by an en banc court, we are bound by it. But we will not extend the case beyond its factual setting.

The primary injury in this case, although limited to property damage, was sustained by a vessel and its flotation apparatus. In *East River S.S. v. Transamerica Delaval*, 476 U.S. 858, 864, 106 S.Ct. 2295, 2298, 90 L.Ed.2d 865, 872 (1986), the Supreme Court noted that vessels in maritime commerce were a "primary concern of admiralty law" and held that the maritime nexus requirement "clearly was met" where the tort caused damage to these vessels. In this light, we are persuaded that the damage suffered by the drilling barge and its buoyancy mat are sufficiently related to traditional admiralty concerns to bring this case within the admiralty jurisdiction.

Because we find that *Sohyde* and *Houston Oil* do not control and that a sufficient maritime nexus exists, we must reverse the dismissal of this case and remand it for further proceedings.

REVERSED and REMANDED.