**AGIP PETROLEUM CO., INC., Plaintiff,**

v.

**GULF ISLAND FABRICATION, INC., et al., Defendants.**

No. Civ.A. H–94–3382.

United States District Court, S.D. Texas, Houston Division.

Dec. 4, 1997.

Kent Ewing Westmoreland, Claude LeRoy Stuart, III, Phelps Dunbar, Houston, TX, Michael F. Walther, New Orleans, LA, for Agip Petroleum Co., Inc.

James M. Tompkins, Galloway Johnson et al., Houston, TX, for Gulf Island Fabrication.

Hubert Oxford, III, Benckenstein & Oxford, Beaumont, TX, Douglas J. Shoemaker, Bell & Letourneau, Houston, TX, for McDermott Inc.

Steven Lynn Roberts, Fulbright & Jaworski, Houston, TX, for Snamprogetti USA Inc.

Michael Patrick Morris, Tekell Book Matthews and Limmer, Houston, TX, for Petro–Marine Engineering of Texas Inc.

### Opinion on Coverage

HUGHES, District Judge.

1. *Introduction.*

Various underwriters issued insurance to Agip for its construction of a production platform jacket off the coast of Louisiana. The platform toppled. Agip seeks its uninsured consequential losses from its contractors—Gulf Island, Petro–Marine, and McDermott. Because they are also named insureds, the contractors want the underwriters to defend and indemnify them for Agip's claims. The underwriters are not responsible to the contractors because the contractors are not true third-parties covered under the policy. The policy excludes third-parties from coverage for lost revenues involving the insured property—the platform.

Agip's subrogated underwriters also seek to recover from the contractors the property damages they paid Agip. Again the contractors want the underwriters to cover them. The underwriters have no duty to defend or indemnify the contractors for the property damage because the contractors are not first-parties covered for property damage and, even if the contractors were true third parties, the policy excludes them from coverage for property damage involving the insured property—the platform.

Last, because Snamporetti is an affiliate of Agip, the underwriters have fulfilled their contractual obligations to the Agip–Snamporetti affiliates as principal assureds; howev-

er, Snamporetti is not liable to the subrogated underwriters for its contribution to the property damages.

## 2. *Background.*

Agip Petroleum develops offshore oil fields. Snamporetti was to supervise the engineering and fabrication. Agip hired the contractors to build a platform on Grand Isle Block 102 off the Louisiana coast. This type of platform is called a "platform jacket" because the drilling and production work is done through an open core. Three contractors had a role in the construction:

- Gulf Island was to fabricate the platform.
- Petro–Marine, through a sub-contract with Snamporetti, was to design it.
- McDermott was to transport and install it.

Fabrication was completed in October of 1993. Soon after, McDermott transported the platform to the site. As it was being installed, the mud mats began to break loose. The mats support the legs of the platform, distributing the weight of the rig evenly over a wide area and preventing the legs from sinking into the mud of the sea bed. Repairs were done. The platform was then prepared for lowering. The mats continued to interfere with the installation, and they were removed by divers. The platform was then lowered to the sea bed without mats. During pile-driving, the platform capsized in 257 feet of water. The platform was raised and towed to shore for repairs. In January of 1994 the platform was successfully installed. Agip incurred costs exceeding $15 million.

Agip was insured for the project by primary and excess builder's risk insurance policies issued through underwriters at Lloyd's of London and others. Agip's underwriters paid the damages up to the limits of the policy—$12 million.

- Agip now sues the contractors and Snamporetti to recover its uninsured losses from delayed gas production.
- The underwriters (who are subrogated to Agip's rights) sue the contractors and Snamporetti for property damage to the platform.

- In turn, the contractors and Snamporetti demand that the underwriters defend and indemnify them for Agip's claims for consequential damages and the underwriters' own subrogated claims for property damage.

If the underwriters were to indemnify the contractors for these uninsured consequential damages, Agip would be recovering in a circular fashion from its insurer for excluded risks. The policy read as a whole and considered in conjunction with Agip's risk allocation plan, precludes this result. Similarly, if the underwriters were to indemnify the contractors for property damage to the platform, then the underwriters would be paying twice the coverage they underwrote when insuring the platform.

## 3. *Allocating Risk.*

Agip chose not to insure for loss due to delayed production; it kept the risk for consequential damages from delays. Agip contracted with Gulf Island, McDermott, Petro–Marine, and Snamporetti to build and install the platform. These detailed contracts contained requirements that the contractors carry their own insurance. Agip bore the risk of loss for consequential damages, and neither Agip nor the contractors contemplated that Agip would buy coverage for these losses. Agip may sue its contractors directly for consequential damages, but Agip's underwriters are not required to cover those losses for either Agip or the contractors.

## 4. *Primary, Secondary.*

The contractors say that a plain reading of the policy shows that the underwriters provided coverage to them for these consequential damages. They claim that the policy provides two distinct types of coverage in two independent sections of the policy—first-party property coverage in section one and third-party liability coverage in section two. They argue that the exclusion of consequential damages for property damage in section one does not apply to this third-party liability. Further, they say the provisions about severability of interests allow them, when there is a dispute between two insureds, to

act like a separate policy had been issued to each named insured.

## 5. *Parties to the Policy.*

Clause 2 of the General Conditions of the Policy divides "Assureds" into two categories: principals and others. Principal assureds include:

- "Agip, Petroleum Co., Inc.;"
- "Parent and/or Subsidiary and/or Affiliated and/or Associated and/or Inter–Related Companies of" Agip; and
- "Project Managers."

Other assureds include:

Contractors and/or sub-contractors and/or suppliers and any other Company, Firm, Person or Party with whom the Assured(s) in (1), (2), (3) or this paragraph (4) have, or in the past had, entered into agreement(s) in connection with the subject matters of Insurance and/or any works, activities, preparations etc., connected therewith.

Gulf Island and McDermott contracted with Agip on the project; Petro–Marine was a subcontractor to Snamporetti. The contractors are other assureds under the policy.

## 6. *Excluding Loss of Use.*

Clause 28 in section one of the policy says that there will be no recovery for "Loss of use or delay in 'start up' of the insured property however caused." This excludes Agip from recovering for its lost revenue from the underwriters. Because of this exclusion, Agip did not claim its damages for loss of use against the underwriters. Instead, it sued its contractors for those damages. The policy does not cover delay damages involving the insured property, whether asserted directly by Agip against the underwriters or indirectly by Agip through its contractors against the underwriters.

## 7. *Format of the Policy.*

The policy provides two distinct coverages in two sections of the policy—first-party property coverage in section one and third-party liability coverage in section two. Each of these sections covers distinct risks; each has separate deductibles and limits.

Section two of the policy begins with a discussion of coverage for third parties. Subsection B of clause 40, dealing with "General Third Party Liabilities," states:

Insurers ... agree that if the Assured shall become liable ... to pay ... any other loss arising from ... the Assured's operations in connection with the Project, that is to say ... loss of or damage to or loss of use of property of any kind or description, *including all other direct or indirect or consequential loss resulting from loss of or damage to the property* .... Insurers will ... indemnify the Assured for such losses.... (emphasis added).

The contractors interpret this to mean that section two covers them for their liability as third-parties and to mean they are covered for their liability *between* insureds. They extract this theory from clause 41, the "Cross Liability Clause," which says:

In the event of one Assured incurring liability to any other of the Assureds, this insurance shall cover the Assured against whom claim is ... made ... as if separate policies had been issued to each Assured.

The contractors read these two clauses with clause 2 of the General Conditions—the severability-of-interests provision. It says that "This insurance shall be deemed to be a separate insurance in respect of each Assured hereunder (as if a separate policy had been issued to each)."

Reading these three clauses together, the contractors conclude that the plain language of the policy entitles them to coverage. They argue that when a claim is made against one insured, that insured becomes the only insured for the purposes of determining coverage. By this reading, Agip's claims are "third-party claims" against the contractors.

From this interpretation, the defendants draw their final and critical conclusion: Because section two expressly covers losses "including all other direct or indirect or consequential loss of or damage to the property," the exclusion in section one does not apply. The contractors claim that the exclusion of consequential damages is in section one and that it limits only the coverage of section one.

They point out that nothing in clause 40 or elsewhere in section two adopts this exclusion.

### 8. *Third Party Liability.*

A principal insured's claim against secondary insureds is not a third-party claim. Third-party coverage insures against injury done by an insured to a third party's property. "[T]he ... question of insurance coverage under a third-party liability policy turns ... on whether a third party has sustained injury to ... its own property." *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 783, 625 A.2d 1021, 1033 (Md.1993).

■ For third-party coverage to attach, the claim must be made by someone not a party to the insurance and for damage to property other than that insured. Agip is not a third party; it is the policyholder. Its claim against the other insureds is for losses to the insured property. The third-party coverage in section two of the policy is for damage to true *third* parties—a non-Agip, non-contractor party.

The contract does not create "internal" third-party liability among the insureds; the severability provisions correctly apply only when the third party is a stranger to the policy. If McDermott's work boat, while following Snamporetti's instructions, damaged a passing tanker, then McDermott would have separate coverage for its severed interests in a claim by the tanker. If Snamporetti dropped equipment McDermott hired from a Pascagoula supply house, the claims would be covered under section two.

Agip chose *not* to get coverage for loss of use and delay, negotiated a sophisticated contract with sophisticated parties, and assumed the risk of loss. The contractors chose not to insure against the risk that their acts might generate a loss of use, and they cannot now shift that risk to the underwriters. "If one coverage part specifically excludes certain types of damages, the policy's drafters surely would not permit actions excluded under one portion of the policy to be covered under a subsequent part." *Decorative Center of Houston v. Employers Casualty Co.*, 833 S.W.2d 257, 260 (Tex.App.—Corpus Christi 1992, writ denied).

### 9. *Parties & Property Damage.*

■ If the contractors did qualify as true third-parties, the underwriters assert that the contractors are still excluded from coverage for property damage by the cross-liability clause. The second and last paragraph of it says:

> In no event shall this Section II [third-party liability] provide coverage for any physical loss and/or damage to or defect discovered in the property insured.

The "property insured" includes "the works executed in performance of all contracts ... and all materials, components, parts, machinery, fixtures, equipment or any other property destined to become a part of the completed project ..." and that "For the purpose of this Policy, the contracts represent the entire project...."

Agip's claims against the contractors are for the losses to the insured property—the platform. No coverage attaches to third parties for property damage, even under the contractors' reading of section two for damage to the platform.

### 10. *No Greater Coverage.*

■ The "benefits of insurance" clause in the general conditions of the policy says:

> The rights under this insurance of any Assured shall only be exercised through the Operator [Agip], or at their direction. Where the benefits of this insurance have been passed to an Assured by contract, the benefits passed to that Assured shall be no greater than such contract allows and in no case greater than the benefits provided by this insurance.

Since the rights of the insurance can be exercised only through Agip and since Agip is not covered for loss of use under the policy, the contractors cannot obtain a greater benefit from the insurance than Agip.

### 11. *Snamporetti.*

#### A. *The Principal.*

■ Snamporetti is a "principal assured" under the policy. Under the policy,

if Snamporetti is a company affiliated with Agip or if it is the project manager, then it is considered a "principal" as opposed to an "other" assured. Agip and Snamporetti are completely owned by the same entity; therefore, Snamporetti and Agip are affiliates under the policy, and Snamporetti is a principal insured.

### B. *Excluded Consequences.*

As a principal insured, Snamporetti could not claim coverage for loss of use any more than Agip. If not a principal insured, then it is in the same condition as the other insureds and is without coverage.

### C. *Other Insurance.*

As a principal insured, Snamporetti suggests, it would then not be subject to the "other insurance" arguments raised by the underwriters. While this may be true, it is inescapable that the underwriters have fulfilled their contractual obligations under the policy to the Agip–Snamporetti unit.

### D. *Independent Contract.*

Snamporetti argues that Agip agreed to provide builder's risk insurance, including third-party liability coverage, for $50 million. The language of the Agip–Snamporetti contract requires Agip to furnish the same insurance to Snamporetti that is provided by the underwriter's policy. Clause 3.8 says: "[Agip] shall effect and maintain ... a Contractors All Risk insurance ... covering the project property.... This platform shall be construed to have a third party liability section with a limit of U.S. $ 50,000,000."

Snamporetti can sue Agip if it breached a contractual obligation, but it cannot compel the underwriters to cover what they excluded.

### E. *Subrogation.*

Because Snamporetti is a principal insured it is not liable to Agip or its subrogated underwriters.

## 12. *Conclusion.*

The underwriters owe no coverage to the contractors for damages to the platform or for lost use.

Snamporetti is not liable to the underwriters for its contribution to the damage to the platform.

### Interlocutory Judgment on Coverage

1. The underwriters are not responsible to Gulf Island, McDermott, or Petro–Marine.

2. The underwriters have met their obligations to Agip/Snamporetti.

3. Snamporetti is not responsible to the underwriters for their subrogated claim for property damage to the platform.