**AGIP PETROLEUM COMPANY, INC., Plaintiff,**

v.

**GULF ISLAND FABRICATION, INC., et al., Defendants.**

**Civil Action No. H–94–3382.**

United States District Court,
S.D. Texas,
Houston Division.

July 31, 1998.

J. Harrell Feldt, Vinson & Elkins, Houston, TX, for Plaintiff.

Innes MacKillop, Brown, Sims, Wise & White, Houston, TX, for Defendant.

Opinion on Choice of Law

HUGHES, District Judge.

1. *Introduction.*

Agip hired McDermott to transport and install a drilling platform off the Louisiana coast. During installation, the platform capsized. Agip sued McDermott to recover its uninsured losses from delayed production. The parties disagree on what law governs.

General maritime law applies for two reasons. First, the contract between McDermott and Agip specified maritime law for their disputes. Second, the contract is inherently maritime.

2. *Background.*

In June 1993, Agip Petroleum hired McDermott to transport and install a production platform on its Grand Isle Block 102 on the outer continental shelf off the Louisiana coast. In October 1993, McDermott took the jacket to sea to install it. Defective mud mats caused the jacket to collapse. It was returned to shore, repaired, and installed. Agip was not insured for loss from delayed production, estimated to be $47,330,000. See

*AGIP Petroleum Co. v. Gulf Island Fabrication, Inc.,* 3 F.Supp.2d 754 (S.D.Tex.1997). (Opinion on Coverage with factual background).

The choice of law matters because maritime law does not allow the recovery of "pure economic losses" like Agip has suffered, but Louisiana law allows them. Agip contends that because of the location of the accident its action is governed by the federal law that makes the adjacent state law apply, making Louisiana law the surrogate federal law.

### 3. Choices of Law.

██ Agip and McDermott entered into this sophisticated, international contract, having chosen the law that applies and allocated the risks among themselves and their insurers. Although courts occasionally invalidate choices of law on their perception of an overriding public policy, usually in the context of a personal injury, the law reflects a public policy of private arrangements for sharing risk and choosing standards. *See, e.g., Matte v. Zapata,* 784 F.2d 628 (5th Cir.1986).

Agip was in a position to evaluate the circumstances, allocate risks, and memorialize its choice in a written contract. Agip suffered a loss that it chose to bear itself by not insuring and by excusing McDermott from bearing the loss by its choice of law. Agip could have selected Louisiana law, but McDermott would have bid the job based on its potential liability under that law rather than maritime law. Allowing a party to change its choice of law has the same effect as allowing it to shorten the time for performance—it raises the other party's cost.

### 4. Mixed Contracts, Clear Intentions.

Agip's contract with McDermott had two components—transportation and installation. It could argue that the installation of the platform is covered by the federal use of state law. While the two parts might independently be covered by different law, they are in one contract with a single choice of law. Faced with a performance that might fall into either maritime law or state law, Agip opted for certainty, inserting a specification of maritime law.

### 5. When Maritime?

The Outer Continental Shelf Lands Act applies federal law to fixed drilling platforms on the outer continental shelf, treating them as though they were dry ground in an exclusive federal enclave. 43 U.S.C. § 1333(a). To fill gaps in the federal law, the statute adopts the laws of the closest state as federal law. 43 U.S.C. § 1333(a)(1) & (2).

██ Maritime law applies to vessels on navigable waters engaged in traditional seaborne activities. When maritime and federally used adjacent state law conflict, maritime law prevails. *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223, 1229 (5th Cir.1985); *Rodrigue v. Aetna Casualty and Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Admiralty jurisdiction and maritime law apply if the case is substantially related to maritime trade—including support activities like salvage—in addition to its location on navigable waters. *Laredo,* 754 F.2d at 1230; *Broughton Offshore Drilling, Inc. v. South Central Machine, Inc.,* 911 F.2d 1050, 1052–53 (5th Cir.1990) (stating that salvage operations have sufficient nexus to traditional maritime activities).

### 6. Nexus by Contract.

██ An agreement for transporting supplies to a well site in a vessel is a maritime contract; if the contract is maritime then the law is maritime. *Laredo,* 754 F.2d at 1231. The contract with Agip required McDermott to load the platform aboard its boat, to carry it to the gas field, and to use the boat to erect it. Both furnishing transportation and a sea-borne work platform are quintessential maritime activities. The contract is maritime, and maritime law applies.

### 7. Conclusion.

Agip is attempting to rewrite a contract in which it had clearly agreed to the choice of maritime law for resolving disputes. Because the parties specified that maritime law would govern in disputes and because the contract is inherently maritime, maritime law applies in this case.

Order on Choice of Law

Maritime law will govern this dispute between Agip and McDermott (282).