LYNCH, Circuit Judge.
The ultimate issue in this case revolves around the exemption for “any employee employed as a seaman” from the overtime requirements of the Fair Labor Standards Act of 1938 (“FLSA”). 29 U.S.C. § 213(b)(6). The plaintiff, Megan McLaughlin, worked on a Boston-based commuter ferry owned and operated by her employer, Boston Harbor Cruise Lines, Inc (“Boston Harbor”).[1] She sued, alleging that Boston Harbor was not paying her overtime pay that was due to her under the FLSA, 29 U.S.C. § 207, as well as similar Massachusetts law.
In response, Boston Harbor filed a motion to dismiss for failure to state a claim under FedR.Civ.P. 12(b)(6), noting that any employee employed as a “seaman” was exempt from the overtime requirements under the FLSA, and alleging that, based on McLaughlin’s complaint, she could prove no set of facts that would take her outside of this exemption. The district court agreed with Boston Harbor and dismissed the case. Because the applicability of the “seaman” exemption to an individual like McLaughlin is a fact-dependent issue that is best decided after a full factual record has been compiled, it was error to dismiss this case at the 12(b)(6) stage. We reverse, vacate the dismissal, and remand for further proceedings.
I.

Complaint and Procedural History

Since this case was decided on a 12(b)(6) motion to dismiss, and no discovery has occurred, we recite the allegations as they appear in McLaughlin’s complaint.
In her complaint filed May 14, 2003,[2] McLaughlin alleges that she was employed by Boston Harbor from June 1997 through December 2002, working on one of its commuter boats for approximately 80 hours per week in the summer and approximately 60 hours per week in the winter. She was paid an hourly wage of between $8 per hour and $11.50 per hour and, she alleges, was not paid overtime for her hours in excess of 40 per week.
McLaughlin’s allegations about the nature of her employment on the commuter ferry are quite sparse, occupying only a few sentences. She alleges that her “duties” throughout her employment were those of a “deckhand.” “For example, she took passenger’s tickets, loaded and unloaded passengers, collected fares, stood by at the dock to ensure safe exiting of passengers and swept the boat and dock areas.” She further alleges that “[f]or more than 90% of her average work day, she engaged in activities not related to the navigation” of the commuter ferry. She added that she was not “actively engaged in the operation or navigation of the com *49 muter vessels upon which she worked” and that “[s]he did not operate the vessels, chart courses, monitor radar or perform any other duties related to the navigation of the subject commuter vessels.”
After Boston Harbor filed its motion to dismiss and accompanying memorandum of law, the district court scheduled a hearing for March 11, 2004. However, no such hearing was ever held; on the day that was scheduled for the hearing, the district court granted Boston Harbor’s motion to dismiss “substantially for the reasons advanced in the defendants’ papers.” No written opinion was issued.
McLaughlin filed a timely appeal. On appeal, two entities, the Secretary of Labor and the National Association of Passenger Vessel Owners, Inc. (an industry trade association), have filed amicus briefs with us. The district court did not have the benefit of these amici.

Arguments on Appeal

On appeal, McLaughlin relies heavily on her view of the interpretative regulations issued by the Department of Labor, see 29 C.F.R. pt. 783. McLaughlin points out that the regulations state that it is the “character of the work” performed, and not “what it is called or the place where it is performed,” that determines whether someone is “employed as a seaman” — thus, the fact that she works on a boat is not determinative. 29 C.F.R. § 783.33. Further, McLaughlin emphasizes the Labor Department’s formulation that an employee will be regarded as a “seaman” for purposes of the exemption only if she performs “service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided [s]he performs no substantial work of a different character.” 29 C.F.R. § 783.31. McLaughlin argues that because most of her work involved taking tickets, loading and unloading passengers, and cleaning the boat, she does not meet this test. Finally, McLaughlin states that the legislative history of the FLSA makes it clear that the exemption should be interpreted narrowly and differently from other acts like the Jones Act, see 46 U.S.C.App. § 688(a), so as not to exclude too many workers from FLSA protections. Although McLaughlin argues as though she is entitled to judgment in her favor, she also argues that dismissal was wrong because she is entitled to discover additional facts.
The Secretary of Labor, in her amicus brief in support of McLaughlin, argues essentially that McLaughlin’s proposed interpretation and application of the Department of Labor regulations dealing with the “seaman” exemption is correct, reflects the Secretary’s own “longstanding interpretation” of these regulations, and should be adopted by the court.
Boston Harbor also relies heavily on the Department of Labor regulations, but it interprets them differently. In its view, the regulations classify workers into three groups: (1) “water transportation workers, e.g. members of the crew,” (2) employees, such as concessionaires, who do not report to the master of the ship, and (3) “industrial employees.” See 29 C.F.R. §§ 783.32, 783.33, 783.34. Boston Harbor believes that the first group falls under the exemption, while the second and third do not. It views all of McLaughlin’s duties as falling into the first group. The Secretary’s contrary interpretation of the regulations articulated in her amicus brief, Boston Harbor argues, is entitled to no deference because it is inconsistent with the Secretary’s past interpretations and has been asserted for the first time in a litigation context. Boston Harbor also argues that the ordinary meaning of the term “seaman” would include any “water transportation workers,” including someone like McLaughlin, and that the legislative histo *50 ry makes it clear that Congress intended to give the term its ordinary meaning. Finally, Boston Harbor argues that the definition of the term “seaman” within the FLSA should not be overly narrow, and should generally match the definition given in other statutes, so that “seamen” receive both the special employment benefits and special burdens associated with their profession. Cf. Harkins v. Riverboat Servs., Inc., 385 F.3d 1099, 1103 (7th Cir.2004) (applying rebuttable presumption that someone classified as “seaman” for purposes of other employment statutes should be recognized as a “seaman” under FLSA as well).
In its amicus brief in support of Boston Harbor, the National Association of Passenger Vessel Owners, Inc. attacks some of the Department of Labor’s regulations themselves (most notably the 20 percent rule in 29 C.F.R. § 783.37), as well as the interpretation of those regulations proposed in the Secretary’s amicus brief. It asserts that the analysis called for by the regulations, especially as interpreted by the Secretary, is unworkable in light of ordinary industry practices because it requires fine-grained assessments of the various tasks an employee performs as well as how much time she devotes to each of her tasks. See, e.g., Harkins, 385 F.3d at 1104. The Association concedes that the regulations themselves (as opposed to the Secretary’s interpretation of them in the amicus brief) deserve some deference, but it nonetheless argues in favor of affir-mance.
II.
We review a motion to dismiss on 12(b)(6) grounds de novo. See, e.g., Zimmerman v. Cambridge Credit Counseling Corp., 409 F.3d 473, 475 (1st Cir.2005). The standard for granting a motion to dismiss is an exacting one: “a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.” Conley v. Gibson, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As well, we must assume that all well-pleaded allegations in McLaughlin’s complaint are true, and we must indulge all reasonable inferences from these allegations in her favor. See, e.g., Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir.2005).

FLSA Claim

Because the FLSA itself contains no definition of a “seaman,” the Department of Labor regulations play a role. At the outset, we distinguish the regulations themselves from the Secretary’s interpretation of those regulations in the amicus brief filed with this case.
There is no dispute in this case about the level of deference owed to the regulations themselves. All parties agree that some deference is owed the regulations. The Secretary of Labor herself calls for application of deference under Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), and no more deference than that. No one involved in this case, including the Secretary, is calling for application of the higher, more formal type of deference explained in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
As for the Secretary’s interpretation of the regulations in her amicus brief, Boston Harbor argues that the Secretary’s interpretation is entitled to no weight at all because it was formulated for the first time during litigation and is inconsistent with the agency’s own prior approach. See, e.g., Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212-13, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (“Deference to *51 what appears to be nothing more than an agency’s convenient litigating position would be entirely inappropriate.”); Alliance to Protect Nantucket Sound, Inc. v. United States Dep’t of the Army, 398 F.3d 105, 112 n. 5 (1st Cir.2005) (“[D]eference is not due to interpretations that are post hoc rationalizations offered by an agency seeking to defend past agency action against attack ..., or to interpretations that have varied erratically over time.” (internal quotation marks and citations omitted)). We do not now know whether the Secretary’s interpretation is novel or instead consistent with the agency’s longstanding practice. Since, as we explain below, interpretation of the regulations themselves is premature at this stage, it is likewise premature for us to discuss the consistency of the Secretary’s interpretation with past practice.
Both parties, as well as the Secretary, rely heavily on the regulations: the crux of their dispute is about how the regulations should be interpreted.[3] The parties also have subsidiary disputes, described above, about the meaning of the legislative history and the relationship between the use of the term “seaman” in the FLSA and the use of that term in other statutes, such as the Jones Act. In the briefs, the parties and amici appear to treat this case as though the core issues involved can and ought to be resolved at this 12(b)(6) stage; the district court also fell into this trap.
Any interpretation of the FLSA or its regulations, at this stage of the proceedings, would be error because it would be premature. We need not and do not engage in any such interpretation. In particular, we decline the Secretary’s invitation for us to adopt her preferred interpretation of the regulations now, before any factual context has been developed.
The statute, the regulations, and the case law, by contrast, outline an approach that is quite fact-intensive. The test according to the regulations “depends upon the character of the work [an employee] actually performs,” and specifically upon whether that employee performs service “as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of such vessel as a means of transportation.” 29 C.F.R. §§ 783.31, 783.33. In applying this test, the regulations make distinctions that are factually intricate: they state, for example, that surgeons and cooks onboard ships will generally fall within the exemption, but stevedores or roust-abouts whose principal duties require them to load or unload the vessel in port will not fall under it. See id. §§ 783.32, 783.33. The test becomes especially complicated by the fact that many maritime-industry employees — like McLaughlin — perform multiple tasks during the course of the day. In such cases, the regulations state that the exemption will not apply if a “substantial amount of work of a different character” is performed by the employee at issue, 29 C.F.R. § 783.31; “substantial” is defined under the regulations as “more than 20 percent of the time worked by the employ *52 ee during the workweek,” 29 C.F.R. § 783.37.
The Supreme Court, in a Jones Act case, has recently stated that the inquiry into whether someone is a “seaman” is bound to be a fact-intensive one: “The inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee’s precise relation to it.” McDermott Int’l, Inc. v. Wilander, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). The Court has suggested that the “seaman” exemption under the FLSA is no exception to the rule that the definition of “seaman” is fact intensive. See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 713-14, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986). We made a similar observation in our only case to apply the FLSA’s “seaman” exemption. See Walling v. Bay State Dredging & Contracting Co., 149 F.2d 346, 351 (1st Cir.1945) (“The line of demarcation between seamen and non-seamen is not distinctly drawn, and probably cannot be. It depends a good deal upon the facts in each case, especially upon the character of the work that is principally engaged in.”).
Finally, other circuits, whether heavily guided by the Department of Labor regulations or not, have also taken an approach that often turns heavily on factual distinctions about the sort of work the plaintiff is performing. In Harkins, a case decided at trial which involved employees who worked on a gambling riverboat in Chicago, the court noted that application of the exemption was not subject to any obvious per se rules but rather depended crucially on the kinds of duties that the employees performed:
A blackjack dealer does not become a seaman by virtue of leaving his job at Harrah’s land-based casino and taking a job at Harrah’s riverboat casino, but likewise a helmsman does not cease to be a seaman because he transfers to a casino boat that spends most of its time moored. It was for the jury to decide whether the three plaintiffs whose overtime claims survived to trial were more like the helmsman than like the blackjack dealer.
385 F.3d at 1104; see also Owens v. SeaRiver Mar., Inc., 272 F.3d 698, 701-04 (5th Cir.2001); Martin v. Bedell, 955 F.2d 1029, 1036 (5th Cir.1992); Worthington v. Icicle Seafoods, Inc., 796 F.2d 337, 338 (9th Cir.1986); Knudsen v. Lee & Simmons, Inc., 163 F.2d 95, 95-96 (2d Cir.1947).
Unsurprisingly, then, courts have generally decided the issue of whether a given individual falls within the exemption after trial, see, e.g., Icicle Seafoods, 475 U.S. at 710, 106 S.Ct. 1527; Harkins, 385 F.3d at 1101; Martin, 955 F.2d at 1031, Knudsen, 163 F.2d at 95, or on summary judgment, see, e.g., Owens, 272 F.3d at 700, but not on a Rule 12(b)(6) motion. None of the cases that Boston Harbor places weight upon, so far as we can ascertain, were decided by a 12(b)(6) motion before the factual record had even been established. See Harkins, 385 F.3d at 1101; Walling v. Keansburg Steamboat Co., 162 F.2d 405, 406-08 (3d Cir.1947); Weaver v. Pittsburgh S.S. Co., 153 F.2d 597, 598-99 (6th Cir.1946); Bay State Dredging, 149 F.2d at 347-48 (district court decided on stipulated facts); Helena Glendale Ferry Co. v. Walling, 132 F.2d 616, 618 (8th Cir.1942).
Because the legal question presented in this case is so fact-intensive, and because the application of the exemption and regulations to plaintiffs job cannot be determined from the several sentences of bare bones pleadings, we must remand the case for further fact-finding. See, e.g., Cavalier Tel, LLC v. Verizon Va., Inc., 330 F.3d 176, 192 (4th Cir.2003) (“necessarily fact-bound” questions are normally not decided by a motion to dismiss); Krodel v. Young, *53 748 F.2d 701, 712 (D.C.Cir.1984) (same). Of course, even in this fact-specific area, dismissal under 12(b)(6) may sometimes be appropriate, but only where it is crystal clear under established law that the plaintiff is a “seaman” under the FLSA. That is not this case, and the district court erred in dismissing this case at the 12(b)(6) stage. Not only is there no need to go further, but it would be unwise to do so.[4]

Massachusetts State Law Claim

The Massachusetts state overtime statute, Mass. Gen. Laws ch. 151, § 1A, contains an exemption for “any employee who is employed as a seaman,” thus using essentially identical language as the FLSA. Id. § 1A(10). There are no cases construing the Massachusetts exemption. The parties agree in their briefs, though, that a key factor is interpreting the Massachusetts statute is the interpretation of analogous federal law. See Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 732 N.E.2d 289, 294 (2000).[5] Interpretation of the Massachusetts “seaman” exemption may depend heavily on interpretation of the FLSA’s “seaman” exemption. Since, as we have explained, interpretation of the FLSA is premature, the district court’s dismissal of the Massachusetts state law claim must likewise be vacated, and the claim must be remanded for further consideration.
III.
The district court order dismissing McLaughlin’s complaint is reversed, the judgment is vacated, and the case is remanded for further proceedings consistent with this opinion. Costs are awarded to McLaughlin.

. The role played by the other defendant in this case, Modern Continental Construction Co., is unclear. Throughout the opinion, we refer to both defendants simply as "Boston Harbor.”

. The complaint was filed "on behalf of herself and all others similarly situated.” It is unclear from the complaint and accompanying documents whether McLaughlin sought to bring a class action or instead a collective action under the FLSA. See 29 U.S.C. § 216(b). We have no occasion to address these procedural issues.

. It is true that one of the amici, the National Association of Passenger Vessel Owners, Inc., challenges some of the Department of Labor's regulations based on their unworkability in light of industry practice. The Association's concerns about the workability of the scheme established by some of the regulations are fact-intensive issues that, like the other questions in this case, are best dealt with after a full record has been established. Many of the challenges may prove unnecessary, depending on how the factual record develops during discovery, and all of the challenges require information about the nature of the industry and the application of the Secretary’s test that we do not yet have. These challenges may, of course, be raised and explored below on remand.

. We do not suggest that it would be inappropriate to dispose of this or any other case at summary judgment if the summary judgment standards are met. We also note that the district court was not given the benefit of the views expressed, for the first time on appeal, by the two amici. The district court may wish to consider those views on remand.

. Boston Harbor also points out that, according to Goodrow, where a statute does not effectively define a term, that term should be defined in accordance with the common meaning of the word and in light of the historical circumstances of its enactment. See 732 N.E.2d at 294. We have found no relevant legislative history, and we think it premature to interpret the common meaning of the term “seaman'' or to apply it before a factual record has been developed.