DECISION
Before this Court is an appeal from a decision of the Rhode Island Department of Labor and Training (the "Department") finding that David Cate ("Cate"), a former employee of appellant Harbor Cruises LLC ("Harbor"), is entitled to overtime payments pursuant to R.I.G.L. 1956 § 42-14-4.1 For the reasons set forth in this Decision, this Court affirms the Department's decision.
 I Relevant Factual Background and Procedural History
Harbor, also known as "Boston Harbor Cruises," is a Massachusetts company headquartered in Boston, Massachusetts. Among other services, Harbor provides passenger ferry service from Providence to Newport.[1]
Harbor employed Cate, a resident of Johnston, Rhode Island, as a senior deckhand and engineer on its Providence-Newport ferry route from at least July 20, 2002 to November 2, 2002. Cate's rate of pay was $12 per hour.
At some point following Cate's employment with Harbor, the United States Department of Labor (USDOL) investigated Harbor for violations of the Fair Labor *Page 2 
Standards Act (FLSA). On January 22, 2004, Richard D. Sansone, Assistant District Director of the USDOL, sent Cate a letter informing him that under the FLSA, Harbor owed him $1,137 in back wages. The letter stated that the USDOL had asked Harbor to pay these wages but that Harbor had not done so. As to remedies, the letter, which does not indicate that it was copied to Harbor, informed Cate that the USDOL had chosen not to take legal action against Harbor, though he was free to take legal action on his own behalf.
The letter made no reference to overtime wages. Nevertheless, Cate recognized or became aware that the letter referred to overtime compensation for the hours he worked in excess of forty hours per week during his period of employment at Harbor. On February 5, 2004, Cate filed a complaint with the Department's Division of Labor Standards seeking payment of $1,137 in overtime wages.[2] Because Cate filed his claim with the Department, a Rhode Island agency, rather than in a forum with authority to enforce federal law, the claim was treated pursuant to R.I.G.L. 1956 § 28-2-4.1, Rhode Island's overtime wage law, rather than the FLSA.
The Division of Labor Standards was unable to resolve the matter. On June 16, 2005, at the request of Cate and Harbor, the Department conducted a hearing on the matter, as is permitted by R.I.G.L. 1956 § 28-14-19.[3] At the hearing, the Department determined, using information provided by the USDOL, that Cate worked approximately 189.5 hours in excess of forty hours per week, for which Harbor compensated him at his regular rate of $12 per hour. The Department calculated that, assuming Rhode Island law *Page 3 
applied, Cate indeed would be owed $1,137, or an extra $6 per hour, as overtime compensation.
Harbor did not dispute that Cate worked 189.5 overtime hours or that he would be entitled to $1,137 if Rhode Island labor law were found to apply. Nonetheless, Harbor contended that Rhode Island overtime wage law should not apply to Cate. The reason, Harbor argued, is that the Fair Labor Standards Act (FLSA) does not permit states to require payment of overtime wages to an employee who the Act classifies as a "seaman."
Cate never presented any argument as to whether he would be classified as a "seaman" under the FLSA. The only information he provided in his testimony about his job responsibilities was that he had been a "senior deckhand and engineer." See Transcript of June 16, 2005 Hearing at 7. Harbor, represented by Frederick L. Noland, its managing member, contended that Cate met the requirements of a "seaman" under the FLSA because Cate was a senior deckhand and engineer working aboard a federally-documented vessel.[4] Noland stated:
 So the bottom line is that the vessel that David worked upon was a federally documented vessel engaged in water transportation. David was a senior deckhand/engineer on the vessel as he testified to. By virtue of that testimony, Mr. Cate has indeed supported our position that he is indeed a seaman aboard a vessel that's documented in the United States.
Id. at 20. Essentially, Harbor's position was that regardless of Cate's job responsibilities, he would be considered a "seaman" under the FLSA because all employees on Harbor's vessels qualified as such. Noland stated at the hearing: "So our position has been and *Page 4 
always will be, until we are told that it shouldn't be, is that the exemption applies to people working aboard our vessels." Id. at 21.
On August 30, 2005, the Department issued its decision on the matter. The Department found that the FLSA does not bar Rhode Island from requiring that seamen be paid overtime wages and that Cate was therefore entitled, pursuant to R.I.G.L. 1956 § 28-2-4.1, to the payment he sought. The Department did not analyze whether Cate would be considered a "seaman" under the FLSA. Nonetheless, apparently the Department concluded that Cate would qualify as a "seaman" when, focusing on the preemption issue, it stated: "Although the petitioner is a seamen [sic], he is performing duties in Rhode Island, and his labor rights must be governed by Rhode Island law." .Decision at 6.[5]
On September 29, 2005, Harbor filed a timely appeal to this Court pursuant to R.I.G.L. 1956 § 42-35-15(b), seeking reversal of the Department's decision on grounds of preemption. Cate and the Department each were served with a summons and Harbor's complaint on October 4, 2005. The Department filed a timely answer on October 20, 2005; Cate did not answer the complaint. Harbor and the Department, but not Cate, have submitted memoranda to this Court. The case was assigned for decision in October 2007.
 II Standard of Review
In its role as an appellate court reviewing a final agency decision, the Superior Court is governed by R.I.G.L. 1956 § 42-35-15(g). That section provides, in relevant part, as follows: *Page 5 
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
As this statutory provision indicates, the Superior Court's review of agency decisions is limited to "`an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision.'" Nickerson v. Reitsma, 853 A.2d 1202,1205 (R.I. 2004) (quoting Barrington School Comm. v. R.I. State LaborRelations Bd., 608 A.2d 1126, 1138 (R.I. 1992)). "Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett WireCo. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (R.I. 1977).
 III Analysis
Federal law providing for a minimum wage and overtime pay is contained in the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. As to overtime wages, the FLSA requires employers engaged in "commerce" to pay employees wages "at a rate not less than one and one-half times the regular rate" for hours worked in excess of 40 hours per week.See 29 U.S.C. § 207(a)(2). *Page 6 
The FLSA exempts from its overtime wage requirements "any employee employed as a seaman." See 29 U.S.C. § 213(b)(6). USDOL regulations define a "seaman" under the FLSA as a person who works "primarily as an aid in the operation of [a] vessel as a means of transportation, provided he performs no substantial amount of work of a different character." See 29 C.F.R. § 783.31 (2008). One rationale for the exemption is that "at sea, with a normal life impossible, working more than 40 hours a week is an appropriate work norm, as distinct from the situation in most ordinary employments. . . ." Harkins v. RiverboatServs., 385 F.3d 1099, 1102 (7th Cir. 2004).
Rhode Island law governing overtime wages is similar to the FLSA. Under R.I.G.L § 28-12-4.1(a), entitled "Overtime pay," employers must compensate employees at a rate of at least one and one-half times the regular rate for hours worked in excess of 40 hours per week. Like the FLSA, Rhode law provides exemptions to the overtime wage requirement for certain classes of employees. See R.I.G.L. § 28-12-4.3 (entitled "Exemptions"). Although § 28-12-4.3 provides exemptions for summer camp employees, police officers, and firefighters, the provision contains no exemption for seamen. Cf. R.I.G.L. § 28-12-4.3 (containing no seamen exception) with Mass. Gen. Laws ch. 151, § 1A (10) (containing an exemption to overtime pay requirements for "any employee who is employed as a seaman"). Thus, under Rhode Island law, unlike the FLSA, a seaman must be paid overtime wages.
Generally, the FLSA does not prevent states from enacting their own overtime wage provisions. The Act contains a "savings clause" which expressly permits states to establish a lower maximum workweek, thereby triggering the award of overtime pay:
 (a) No provision of this Act or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal *Page 7 
ordinance establishing a minimum wage higher than the minimum wage established under this Act or a maximum workweek lower than the maximum workweek established under this Act.
See 29 U.S.C. § 218(a) (the entire section entitled "Relation to other laws") (emphasis added). The Second Circuit has ruled that the FLSA's savings clause "explicitly permits states to set more stringent overtime provisions than the FLSA." Pettis Moving Co. v. Roberts, 784 F.2d 439,441 (2nd Cir. 1986).
Despite the FLSA's savings clause, Harbor argues that the FLSA provision exempting an employer from paying overtime wages to a seaman — i.e., the "seaman exemption" — preempts Rhode Island law. Thus, Harbor argues that Rhode Island's overtime wage law does not govern Cate's employment. Harbor further contends that states are prohibited from regulating the overtime wages of a seaman because such regulation would upset the uniformity of federal maritime law, which it argues should govern wage disputes for employees such as Cate.
The Department responds that nothing about the seaman exemption indicates a Congressional intent to preempt state laws requiring payment of overtime wages and that maritime law should give way to Rhode Island employment law given that Cate's employment took place mainly on Rhode Island waters. Although the Department disagrees with Harbor as to whether the FLSA preempts Rhode Island law as to seamen, the Department cedes to Harbor that Cate qualifies as a "seaman" under the FLSA.
A. The Preemption Question
Under the Supremacy Clause of the United States Constitution, the law of the United States is the "supreme Law of the Land." See U.S. Const. Art. VI, cl. 2. Federal *Page 8 
law preempts state law where: "(1) Congress expressly preempts state law; (2) Congress has established a comprehensive regulatory scheme in the area effectively removing the entire field from the state realm; or (3) state law directly conflicts with federal law or interferes with the achievement of federal objectives." Zuri-Invest AG v. Natwest Fin.Inc., 177 F. Supp. 2d 189, 191 (D.N.Y. 2001); see also Guerra,479 U.S. at 281; Waltz v. Exxon Mobil Corp., No. P.C. 02-2436, 2007 LEXIS 10, at *7 (R.I.Super., January 11, 2007).[6]
The few courts to examine whether the FLSA preempts state regulation of overtime pay for seamen have reached inconsistent results. The Ninth Circuit held in Pacific Merchant Shipping Assoc. v. Aubry,918 F.2d 1409, 1419 (9th Cir. 1990), that the FLSA does not preempt California overtime pay laws for seamen working on vessels performing oil cleanup and transporting passengers to oil platforms off the California coast.See also Tidewater Marine Western, Inc. v. Bradshaw, 927 P.2d 296 (Cal. 1996) (finding, like the Court in Aubry, that the FLSA does not preempt California wage law with respect to seamen working on transport vessels to off-shore oil platforms).
However, the Federal District Court for the District of Southern Illinois reached the opposite conclusion in Coil v. Jack Tanner Co.,Inc., 242 F.Supp.2d 555, 559-60 (S.D. Ill. 2002) (finding that the FLSA preempted application of Illinois overtime wage law for employees aboard a tugboat operating on the Mississippi River). In addition, the Ninth Circuit, in a decision subsequent to Aubry, found that Alaska's minimum wage and *Page 9 
overtime laws did not apply to employees working aboard fishing vessels off the Alaska coast. See Fuller v. Golden Age Fisheries, 14 F.3d 1405,1406 (9th Cir. 1994).
Harbor contends that indispensable to the issue of whether the FLSA preempts Rhode Island overtime wage law is the question of the proper boundary between maritime law and state law. Maritime law is a federal body of law which "applies to vessels on navigable waters engaged in traditional sea-borne activities." See Agip Petroleum Co. v. Gulf IslandFabrication, 17 F. Supp. 2d 658, 659 (D. Tex. 1998); Benders v. Board ofGovernors for Higher Educ., 636 A.2d 1313, 1316 (R.I. 1999) . (The "law of the sea is federal in nature.") The ability of maritime law to settle wage disputes between seamen and vessel owners is "anciently established." See Coil, 242 F.Supp.2d at 560 (citing Putnam v.Lower, 236 F.2d 561 (9th Cir. 1956)).
States traditionally have been restricted from legislating in maritime matters in order to promote the application of a uniform system of maritime law. See Aubry, 918 F.2d at 1421 (citing Southern Pac. Co. v.Jensen, 244 U.S. 205, 61 L. Ed. 1086 (1917) and Knickerbocker Ice Co. v.Stewart, 253 U.S. 149, 64 L.Ed. 834 (1920)).[7] However, courts have found that "states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not actuallyconflict with federal law or *Page 10 interfere with the uniform working of the maritime legal system."Aubry, 918 F.2d at 1422.[8]
B. Reaching the Preemption Question
As the above discussion indicates, the contours of state jurisdiction to regulate the overtime wages of seamen are still evolving — much as the boundary between maritime law and state law remains in flux.See, e.g., American Dredging Co. v. Miller, 510 U.S. 443, 452 (1994) ("It would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernible in our admiralty jurisprudence"). Given that courts have split on whether state overtime wage law applies to FLSA-exempt seamen, a ruling on the issue as applied to the facts of this case would reduce uncertainty for Harbor. This Court cannot do so, however, because Harbor has not met its burden of showing that Cate qualifies as a "seaman" under the FLSA.
USDOL regulations, as previously noted, define a "seaman" under the FLSA as a person who works "primarily as an aid in the operation of [a] vessel as a means of transportation, provided he performs no substantial amount of work of a different character." See 29 C.F.R. § 783.31 (2008). These same regulations define "substantial" work of a different character as constituting more than 20 percent of the time worked by an employee. See 29 C.F.R. § 783.37 (2008). Thus, to be defined as a "seaman" by the USDOL, the employee must work for at least 80 percent of his or her time as an aid to the *Page 11 
vessel "as a means of transportation."[9] Considerable case law also provides guidance as to who constitutes a "seaman" under the FLSA.See, e.g., Harkins, 385 F.3d at 1100, 1104 (upholding a jury verdict finding that workers responsible for operations on a floating casino on Lake Michigan were seamen); Walling v. Bay State Dredging Co.,149 F.2d 346, 352 (1st Cir. 1945) (workers conducting dredging operations were not seamen under the FLSA).
Unless Cate is determined to be a "seaman" under the FLSA, the Actrequires that Cate be paid overtime wages — and if Cate must be paid overtime wages under the FLSA, Rhode Island is also free to require that Cate be paid overtime under its own laws. The issue of whether the FLSA seaman exemption preempts Rhode Island overtime wage law therefore arises only if Harbor first can demonstrate that Cate falls within the exemption. Although this Court might address whether Cate nonetheless would be entitled to overtime wages even if he is determined to be an FLSA-exempt seaman, it is not the proper role of this Court to "issue advisory opinions or rule on abstract questions." Vose v. R.I.Brotherhood of Correctional Officers, 587 A.2d 913, 915 n. 2 (R.I. 1991)).
Detailed evidence regarding Cate's job duties would be necessary to determine whether the FLSA seaman exemption applies to Cate. Recent litigation involving Harbor itself makes this evident. InMcLaughlin v. Boston Harbor Cruise Lines, Inc., 419 F.3d 47 (1st Cir. 2005), Megan McLaughlin, a former Harbor employee, brought suit against Harbor in federal court in Massachusetts alleging that Harbor owed her overtime wages. *Page 12 493 F.3d at 48.[10] Her complaint alleged that she worked for Harbor as a "deckhand" on one of its commuter boats from June 1997 to December 2002 and that she worked between 60 and 80 hours per week. Id. at 48. McLaughlin alleged that her activities mainly involved ticket-taking, loading and unloading passengers, and cleanup duties. Id. at 48-49.
In response to the complaint, Harbor filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), arguing that McLaughlin's complaint must be dismissed because she fell within the "seaman exemption" and the equivalent exemption under Massachusetts law. Id. at 48. McLaughlin responded that she did not qualify as a "seaman" — at least as defined by Department of Labor regulations — because more than 90 percent of her day involved non-navigational activities. Id. at 49. The District Court granted the motion to dismiss, finding that based on the facts of her complaint, McLaughlin could not prove that she did not fall within the seaman exemption. Id. at 48. However, the First Circuit reversed, ruling that the factual record needed to be expanded before any determination could be made that McLaughlin was a seaman within the exemption.Id. at 52.
The First Circuit explained in McLaughlin that the reason it was remanding the case was "[b]ecause the legal question presented . . . is so fact-intensive, and because the application of the exemption and regulations to plaintiff's job cannot be determined from the several sentences of bare bones pleadings. . . ." Id. The Court further noted that "courts have generally decided the issue" of whether an employee falls within the FLSA seaman exemption after trial or on a summary judgment motion, but not on a Rule 12(b)(6) motion to dismiss.Id. at 52 (citing Harkins, 385 F.3d at 1101; Martin v. Bedell, *Page 13 955 F.2d 1029, 1031 (5th Cir. 1992); Knudsen v. Lee Simmons,Inc., 163 F.2d 95, 95-96 (2d Cir. 1947); Owens v. Seariver Mar.,Inc. 272 F.3d 698, 700 (5th Cir. 1992)); see also Walling,149 F.2d at 351 (whether an employee is an FLSA-exempt seaman "depends a good deal upon the facts in each case, especially upon the character of the work that is principally engaged in.")
The facts in the record about Cate's employment activities are even less detailed than the facts before the First Circuit inMcLaughlin. In the present case, the only information in the record regarding Cate's job activities is that he was a senior deckhand and engineer aboard a federally documented vessel. If Cate's activities were mainly engineering duties, then he more likely could be characterized as a seaman. On the other hand, the fact that, after investigation, the USDOL believed that Cate had a right to overtime wages under the FLSA suggests that Cate may not have met the definition of an FLSA-exempt seaman. There is simply not enough evidence in the record to make a reasoned determination, one way or the other.
Despite the lack of evidence in the record as to Cate's employment activities, the Department essentially assumed that Cate was a "seaman" under the FLSA. It implicitly accepted Harbor's representation that Cate was a seaman and that Cate, through his testimony, had supported that conclusion. This conclusion was not a factual determination to which this Court must defer. It was a conclusion of law — often referred to as a finding of ultimate fact — without sufficient evidence or any findings of fact by the Department to gird that conclusion. See, e.g.,Hometown Properties v. R.I. Dept. of Envir. Mngmt., 592 A.2d 841, 843
(R.I. 1991) ("[A] determination of whether conditions precedent to the application of a statute have been satisfied is a question of law. . . ."). *Page 14 
This Court therefore concludes that the Department erred in assuming that Cate was a "seaman" under the FLSA without obtaining legally competent evidence or making any findings of fact to support that conclusion.
C. No Remand Is Necessary
Although the Department erred, it does not follow that the matter must be remanded to the Department. By raising the preemption issue, Harbor was asserting an affirmative defense to Cate's wage claim that it had the burden to prove. See Fifth Third Bank v. CSX Corp., 415 F.3d 741,745 (7th Cir. 2005) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof").
That Harbor raised preemption as a defense at an agency hearing, rather than at a trial, is of no import. Agency adjudications, like trials, place burdens of proof on parties contesting an issue. Under Rhode Island's Administrative Procedures Act, agency hearings are conducted, to the extent possible, in conformity with the Rhode Island Rules of Evidence. See R.I.G.L. § 42-35-10(1). Those rules provide that a party against whom a presumption operates bears a burden of proof.See R.I. R. Evid. 306; see also 5 U.S.C. § 556(d) (2008) (under the federal Administrative Procedures Act "the proponent of a rule or order has the burden of proof" at an agency hearing). Rhode Island courts reviewing agency decisions consider whether the parties met their burdens; specifically, they have analyzed whether employers have presented adequate defenses in disputes with employees. See,e.g., Crisloid Plastics, Inc. v. Ladd, No. C.A. No. 83-0260, 1984 LEXIS 39, at *13-14 (R.I.Super., November 28, 1984) (employer did not meet burden of *Page 15 
justifying a pay differential in an employment discrimination claim before Rhode Island Commission for Human Rights).
In the matter at hand, Cate had the burden of showing that he did not receive overtime pay for the hours he worked. Harbor had the burden of proving preemption. Cate met his burden, as was determined by the Department. Because Harbor did not produce sufficient evidence regarding the nature of Cate's employment activities, Harbor did not meet its burden of proving preemption. Cate thus is entitled to the wages he seeks, without further proceedings. By point of comparison, the Rhode Island Supreme Court has stated that the Superior Court's authority to remand to zoning boards "should not be exercised in such circumstances as to allow remonstrants another opportunity to present a case when the evidence presented initially [by remonstrants] is inadequate."Roger Williams College v. Gallison, 572 A.2d 61, 63 (R.I. 1990). For the same reasons, a remand would be inappropriate here.
Another factor persuades this Court not to remand this matter. This is not a situation in which a remand is necessary to gather further evidence to "prevent manifest injustice." See Ferrelli v. Dept. ofEmployment Security, 106 R.I. 588, 595, 261 A.2d 906, 910 (R.I. 1970). Harbor knew, or should have known, at the time of the hearing, that information regarding Cate's employment activities might be essential to determining whether Cate qualified as an FLSA-exempt seaman, yet it chose not to present such evidence.
Harbor was aware at the hearing that USDOL regulations require that an employee falling within the seaman exemption must work at least 80 percent of his or her time as an aid to the vessel "as a means of transportation." See Tr. at 20-21. Rather than *Page 16 
show that Cate met the USDOL's definition of a "seaman" under the FLSA, Harbor argued that the regulations had no statutory basis. See id.
("There's no requirement in the Federal Statute that calls for the [80 percent rule].") Harbor's statement at the hearing that every employee working on a federally-documented vessel qualifies as an FLSA-exempt seaman is also contradicted by case law. See Martin, 955 F.2d at 1035
("Because employment solely on oceangoing vessels does not necessarily make one a `seaman' under the FLSA, a court must look to the actual work performed.")
As an additional matter, Harbor was already litigatingMcLaughlin at the time of the Department's hearing. Although the First Circuit had not yet reached a decision, the plaintiff had appealed the United States District Court's dismissal of the claim and the First Circuit had heard arguments on the matter. See Tr. at 22.[11] Harbor, despite the District Court ruling in its favor, could not have been unaware of the possibility that the First Circuit would rule that more evidence was necessary to determine whether Harbor's employees qualified under the FLSA seaman exemption. Given that McLaughlin was still pending, it was incumbent upon Harbor to present evidence as to Cate's job duties.
Finally, this Court cannot help but observe that Harbor's memorandum to this Court does not even refer to McLaughlin or address whether, in the aftermath of McLaughlin, this Court has enough evidence to conclude that Cate falls within the seaman exemption. This Court will not permit Harbor to sweep under the rug the essential question of whether Cate qualifies as a "seaman" under the FLSA — much less *Page 17 
to ignore a ruling by the First Circuit involving Harbor's own employees on that pivotal issue. The Department's decision to characterize Cate as a "seaman" under the FLSA does not dispense with Harbor's responsibility to show this Court that Cate indeed falls under the exemption. Out of fairness to Cate and in the interests of judicial economy, this Court therefore affirms the Department's decision to award Cate overtime wages, albeit on different grounds.
 IV Conclusion
After a review of the entire record, this Court finds that Harbor did not present legally competent evidence for the Department to determine that Cate was a "seaman" under the FLSA. Without such evidence, Harbor failed to meet its burden to prove that Cate was not owed overtime wages as a result of preemption of Rhode Island overtime wage law by the FLSA seaman exemption. For the reasons set forth herein, therefore, the Department's decision is affirmed.
[1] Harbor states in its memorandum that it provides ferry service from "various points in Rhode Island to Block Island, Rhode Island." The Department does not join Harbor in this assertion.
[2] Cate's claim states that he was working for "Boston Harbor Cruises/RIPTA." It appears from this statement that Harbor operated the Providence-Newport ferry on behalf of the Rhode Island Public Transit Authority. This fact was not discussed at the hearing nor confirmed by the Department in its decision.
[3] Cate was not represented at the hearing by an attorney. Harbor was represented by Frederick L. Noland, who identified himself as the "managing member" of Harbor.
[4] The United States Coast Guard requires federal documentation of "[a]ny vessel of at least five net tons wholly owned by a citizen or citizens of the United States. . . ." See 46 C.F.R. § 67.5 (2008).
[5] Earlier in its decision, the Department treated Cate's "seaman" status in a more hypothetical manner, stating: "A legal issue is presented. `Whether the petitioner is entitled to overtime under the Rhode Island Law if he is exempt from overtime under the FLSA.'" Decision at 4 (emphasis added).
[6] Although courts have fashioned these different species of preemption, some overlap is inevitable, especially between field preemption and conflict preemption. See English v. General Elec.Co., 496 U.S. 72, 79 (1990) ("By referring to these three [preemption] categories, we should not be taken to mean that they are rigidly distinct.")
[7] As the Supreme Court stated in Norfolk S. Railway Co. v.Kirby, 543 U.S. 14, 28 (2004):
 We have explained that Article III's grant of admiralty jurisdiction must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states.
Id. (quoting American Dredging Co. v. Miller, 510 U.S. 443, 451,127 L. Ed. 2d 285 (1994)).
[8] As noted, one circumstance in which federal law preempts state law is where "state law directly conflicts with federal law or interferes with the achievement of federal objectives." The test for preemption in maritime matters could be considered as a maritime-specific restatement of this circumstance, or it could be considered its own preemption test unique to maritime matters. See, e.g., Tidewater, 927 P.2d 296 at 302
(noting that a focus on maritime law "skirts the analytical framework generally applicable to preemption questions.")
[9] The regulations provide that "[t]he term `seaman' includes members of a crew such as sailors, engineers, radio operators, firemen, pursers, surgeons, cooks, and [some] stewards. . . ." 29 C.F.R. § 783.32 (2008). Employees not meeting the criteria include most "concessionaires" and "employees on floating equipment" engaged in dredging operations or other "industrial or excavation work." 29 C.F.R. § 783.34 (2008).
[10] It appears that timing may have prevented the Department from duly considering the First Circuit's opinion in McLaughlin.McLaughlin was issued on August 17, 2005, less than two weeks before the Department issued its Decision, on August 30, 2005. See McLaughlin419 F.3d at 47.
[11] Frederick L. Noland, who represented Harbor at the hearing, stated:
 We had this issue brought to our attention in Boston by an employee who left the company and filed a similar action, private lawsuit. It was dismissed by the Federal Court with prejudice in our favor back in November, and the employee decided to appeal. It was heard by the Federal Appellate Court in the First District in December, and we are still waiting for a determination as to whether they are going to submit it or not or if they are going to send it back to trial.
Tr. at 22. *Page 1