# United States Court of Appeals
## For the First Circuit

No. 07-2504

RIVER STREET DONUTS, LLC,

Plaintiff, Appellant,

v.

JANET NAPOLITANO[*],
SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. F. Dennis Saylor, U.S. District Judge]

Before

Torruella, Stahl, Circuit Judges,
and García-Gregory,[**] District Judge.

Raymond E. Gillespie for appellant.
Gisela A. Westwater, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, with whom
Gregory G. Katsas, Assistant Attorney General, and Elizabeth J.
Stevens, Assistant Director, were on brief for appellee.

March 4, 2009

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Secretary Janet
Napolitano has been substituted for former Secretary Michael
Chertoff.

[**]    Of the District of Puerto Rico, sitting by designation.

**GARCÍA-GREGORY, <u>District Judge</u>**. River Street Donuts, LLC ("River Street") appeals an order of the district court affirming a decision of the Administrative Appeals Office ("AAO") which had affirmed the Bureau of Citizenship and Immigration Services' ("CIS")[1] denial of River Street's employment-based visa petition to legally employ a foreign worker, Farag Mohamed ("Mohamed") as a skilled worker in the position of head baker/supervisor in its donut baking facility. The AAO examined River Street's IRS-certified tax returns for 2001 and 2002 and found that River Street was financially incapable of paying Mohamed's wage because the company's net income and net current assets were less than the proffered wage. River Street now requests this Court to vacate the district court's order and remand its visa petition to the AAO because the AAO allegedly failed to address material evidence. In the alternative, River Street seeks reversal of the order contending that the AAO abused its discretion by not adding the amounts deducted for depreciation in the 2001 and 2002 tax returns to River Street's net income when assessing River Street's financial ability to pay Mohamed's wage.

We find that River Street waived its claim for remand to the AAO on the issue of additional evidence because it failed to properly raise and argue this issue in the district court.

---

[1] The AAO is part of the CIS, which is a subordinate agency within the Department of Homeland Security.

Moreover, we hold that the AAO did not abuse its discretion by not adding depreciation to net income when determining River Street's capacity to assume Mohamed's wage. Accordingly, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 2003, River Street filed a petition with the CIS seeking to legally employ Mohamed, a foreign national, as a skilled worker[2] under section 203(b)(3)(I) of the Immigration & Naturalization Act (the "Act"), 8 U.S.C. § 1153(b)(3).[3] Pursuant to River Street's petition, Mohamed's wage would consist of $19.61 per hour (equivalent to $784.40 per week or $40,788.80 annually). On July 20, 2004, the CIS denied River Street's petition because after reviewing River Street's 2001 and 2002 tax returns, it determined that River Street did not have the financial ability to pay Mohamed's salary. Specifically, the CIS noted that River Street's 2001 tax return showed a loss of $32,309 and current liabilities greater than current assets. The CIS further noted that the 2002 tax return showed an ordinary income of $4,677 and current liabilities again greater than current assets. In both returns, large amounts had been deducted for depreciation: $63,959 in 2001 and $50,614 in 2002.

---

[2] The position that River Street seeks to fill is that of head/baker supervisor.

[3] Section 1153(b)(3)(A)(i) allows skilled workers to receive immigrant visas.

On August 17, 2004, River Street appealed the CIS' decision to the AAO. On September 16, 2004, River Street submitted its brief arguing that its depreciation deductions were only paper losses and should be added back to its net income to demonstrate its ability to pay Mohamed's wage. River Street did not submit additional evidence at that time. On December 29, 2005 (15 months after filing its brief), however, River Street filed additional evidence in the form of bank records and an audited CPA statement. River Street did not explain this late filing or seek leave to submit this additional evidence. On January 9, 2006, the AAO denied River Street's appeal. In its opinion, the AAO first recognized that River Street had submitted "a brief and additional evidence" and then proceeded to explain its holding that River Street failed to establish its ability to pay Mohamed's wage. The AAO's conclusion was based on its analysis of the 2001 and 2002 tax returns submitted by River Street. The AAO determined that the net income and net current assets in both returns were less than the proposed wage for Mohamed. In addition, it found unconvincing River Street's argument that the depreciation deduction in both returns should be included in the calculation of its ability to pay Mohamed's wage. The AAO stressed that, even though a depreciation deduction does not reflect an actual cash expenditure, neither does it represent cash that would be otherwise available to pay wages

because it is a systematic allocation of the cost of a tangible long-term asset.

On March 10, 2006, River Street filed a complaint in the district court arguing that the AAO's decision not to add back depreciation was arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence in the record.[4] In the complaint, River Street did not refer to the additional evidence submitted to the AAO (bank statements and CPA statement) nor did it claim that the AAO had not considered this additional evidence. River Street only vaguely and perfunctorily requested the Court in its third alternative prayer for relief to remand the case for further proceedings. The government moved to affirm the AAO's decision and to dismiss the complaint filed by River Street. The district court granted the government's motion and dismissed River Street's complaint. River Street timely appealed the district court's decision.

River Street brings two claims for relief before this Court. First, River Street requests that the district court's order be vacated and the entire case remanded to the AAO for review of additional evidence because the AAO never considered the accountant and bank statements it submitted 15 months after it filed its brief. Alternatively, River Street seeks reversal of the district

---

[4] The complaint is the only document that River Street filed with the district court.

court's order by challenging the AAO's refusal to add the depreciation expense in its 2001 and 2002 tax returns to net income when determining whether it can pay Mohamed's wage.

## STANDARD OF REVIEW

"We are bound by the same ground rules as the district court in assessing agency decisions." Royal Siam Corp. v. Chertoff, 484 F.3d 139, 144 (1st Cir. 2007) (citing S. Shore Hosp., Inc. v. Thompson, 308 F.3d 91, 97 (1st Cir. 2002)). "Thus, the district court's decision in this case engenders de novo review." Id.

Our standard for reviewing the AAO's decision is governed by section 706(2)(A) of the Administrative Procedure Act ("the APA"), which provides that a "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Review under the arbitrary and capricious standard is narrow and this Court may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions. Trafalgar Capital Assocs. v. Cuomo, 159 F.3d 21, 26 (1st Cir. 1998) (internal quotation marks and citations omitted). Accordingly, our review under section 706(2)(A) is highly deferential, and the agency's actions are presumed to be valid. Carcieri v. Kempthorne, 497 F.3d 15, 43 (1st Cir. 2007). Under this standard, we are required to determine whether the agency's decision is supported by a rational

basis, and if so, we must affirm. <u>Bowman Transportation, Inc.</u> v. <u>Arkansas-Best Freight System, Inc.</u>, 419 U.S. 281, 290 (1974); <u>Carcieri</u>, 497 F.3d at 43 (noting that "[a]n agency's determination is arbitrary and capricious if the agency lacks a rational basis for making the determination or if the decision was not based on consideration of the relevant factors").

**DISCUSSION**

### 1. <u>Waiver of the Remand Claim</u>

River Street first requests that we remand to the AAO for consideration of its late filed evidence. However, River Street raises this argument for the first time on appeal, having failed to raise it before the district court. It is well settled that, "absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." <u>Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59</u> v. <u>Superline Transp. Co.</u>, 953 F.2d 17, 21 (1st Cir. 1992). Further, River Street proposes no reason for us to relax this raise or waive rule, nor do we find any such cause.[5]

---

[5] This Court has the discretion to apply the plain error doctrine and consider issues not adequately raised below. <u>Rocafort</u> v. <u>IBM Corp.</u>, 334 F.3d 115, 122 (1st Cir. 2003) (internal citations omitted). We are "particularly cautious in exercising [this] discretion and do so only when 'error is plain and the equities heavily preponderate in favor of correcting it.'" <u>Id.</u> (internal citations omitted). We are not persuaded that this case is one that merits the exercise of our discretion under this doctrine.

Therefore, River Street's request for a remand for consideration of additional evidence is denied.

2. Financial Ability to Pay the Skilled Worker's Wage

River Street's second argument on appeal is that the AAO abused its discretion by not adding depreciation to the net income reflected in its federal income tax returns. River Street stresses that prior to 2003, the AAO took into account amounts deducted for depreciation in its tax return when computing a prospective employer's financial ability to pay the proffered wage. Nevertheless, River Street acknowledges that before reaching a determination in the present case, the AAO had reversed its policy of adding depreciation back to net income when determining a prospective employer's financial ability to employ a foreign skilled worker.[6] Nevertheless, River Street argues that the AAO has been inconsistent in how it treats depreciation and, therefore, has abused its discretion in not adding back depreciation in the present case. River Street also argues that the AAO's change of policy does not warrant deference under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-844 (1984), and must be evaluated under the more neutral framework delineated in

_____

[6] Together with its brief, River Street submitted several AAO decisions, which clearly demonstrate that since the year 2003 depreciation was no longer counted in an employer's favor.

- 8 -

Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).[7] The government avers that the AAO's decision is entitled to Chevron deference.

In Chevron, the Supreme Court held that when a statute within an agency's jurisdiction is ambiguous and the implementing agency's construction is reasonable, federal courts must accept the agency's construction of the statute. Chevron, 467 U.S. at 843-44 & n.11. Under this framework, unexplained inconsistency in an agency's interpretation of a statute can be a reason for holding the agency's actions to be an arbitrary and capricious change from agency practice under the APA. Nat'l Cable & Telecomms. Ass'n. v. Brand X Internet Servs., 545 U.S. 967, 981 (2005). This Court cannot "attempt to supply a reasoned basis for the action that the agency itself has not given." Citizens Awareness Network v. United States Nuclear Regulatory Comm'n, 59 F.3d 284, 291 (1st Cir. 1995) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). However, pursuant to Chevron, an agency's change in precedent is not invalidating if the agency adequately explains its reasons. Id. The agency's explanation must

_____

[7] If the Skidmore standard is applied to an agency's decision, the decision is entitled to less deference than if the Chevron deference is applied. See McLaughlin v. Boston Harbor Cruise Lines, Inc., 419 F.3d 47, 50 (1st Cir. 2005). Under Skidmore, the agency's decision will not be disturbed if it is persuasive. Skidmore, 323 U.S. at 140. Pursuant to Chevron, an agency's decision is given particular deference and said deference will only be withheld if the reviewing court finds that implementing the agency's construction of a statute or regulation is unreasonable. Chevron, 467 U.S. at 843-44 & n.11.

- 9 -

be accompanied by some reasoning that indicates that the shift is rational and, therefore, not arbitrary and capricious. Id. (internal citations omitted). "[T]his is not a difficult standard to meet." Id.

We have recognized that after the Supreme Court's decision in United States v. Mead Corp., 533 U.S. 218 (2001), the level of deference owed to an informal agency interpretation is "freighted with uncertainty." Doe v. Leavitt, 552 F.3d 75, 79 (1st Cir. 2009) (noting that Mead "does not clarify the circumstance in which Congress should be deemed to have intended an informal agency interpretation to carry the force of law and thus, attract Chevron deference"). Arguably, the AAO's unpublished decision may lack force and as such, Chevron deference could be inappropriate. See Mead, 533 U.S. at 221 (holding that a tariff classification does not warrant judicial deference under Chevron because there was no indication that Congress intended such a ruling to carry the force of law);[8] Christensen v. Harris County, 529 U.S. 576, 587 (2000) (finding that interpretations contained in an opinion letter, much like interpretations contained in policy statements, agency manuals, and enforcement guidelines lack the force of law and,

---

[8] In Mead, the Supreme Court noted that "the overwhelming number of [its] cases applying Chevron deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication." Mead, 533 U.S. at 230. However, the Court did not affirm, or even mention, the application of Chevron to an agency's unpublished decisions.

hence, do not warrant <u>Chevron</u> deference). The <u>Chevron</u> standard was developed in the context of precedential administrative decisions, where an agency's interpretation of a statute has the force of law.[9] In the case at bar, we are dealing with an agency's change of policy in an unpublished, non-precedential decision[10] and not with an agency's precedential interpretation of a particular statute within its jurisdiction.[11] Some Circuits including this one have applied the <u>Skidmore</u> standard when examining non-precedential agency decisions. <u>E.g.</u>, <u>Leavitt</u>, 552 F.3d at 79-80 (recognizing that "if an informal agency interpretation is deemed not to warrant <u>Chevron</u> deference, it may nonetheless lay claim to a lesser degree of deference under the <u>Skidmore</u> banner"); <u>Godinez-Arroyo</u> v. <u>Mukasey</u>, 540 F.3d 848, 850 (8th Cir. 2008) (holding that the less deferential <u>Skidmore</u> standard was a more appropriate standard to be applied to an agency's unpublished opinion); <u>Boykin</u> v. <u>KeyCorp</u>, 521

---

[9] Precedent decisions of the CIS are binding on all its employees in the administration of the Act. 8 C.F.R. § 103.3(c).

[10] "AAO decisions [are] deemed precedent decisions or non-precedent decisions. 8 CFR § 103.3(c). Precedent decisions are published by the U.S. Government Printing Office in bound volumes titled 'Administrative Decisions Under Immigration and Nationality Laws of the United States.' ... Precedent decisions [are] reviewed and approved by DHS and the Department of Justice. 68 Fed Reg. 9824 (Feb. 28, 2003)." Recommendation from the CIS Ombudsman to the Director, USCIS (Dec. 6, 2005) available at http://www.dhs.gov/xlibrary/assets/CISOmbudsman_PR_20_Administrative_Appeals_12-07-05.pdf.

[11] Precedent decisions must be designated and published in bound volumes or as interim decisions. 8 C.F.R. § 103.9(a).

F.3d 202, 208 (2d Cir. 2008); Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1113 (9th Cir. 2007). Pursuant to Skidmore, an agency's "interpretation is 'entitled to respect' only to the extent it has the 'power to persuade.'" Gonzales v. Oregon, 546 U.S. 243, 256 (2006) (citing Skidmore, 323 U.S. at 140). Under Skidmore, the weight afforded to "a judgment in a particular case will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore, 323 U.S. at 140. Other factors may be considered when evaluating the persuasiveness of an agency's interpretation. Leavitt, 552 F.3d at 81 (noting that the list of factors stated in Skidmore is non exhaustive). Said factors include the formality of the adjudication and the agency's expertise.[12] Id. at 81-82.

Contrary to River Street and the government's assertions, we find that the standard of review under which the AAO's decision not to add back depreciation should be reviewed is neither Chevron or Skidmore but the APA's "arbitrary and capricious" standard, i.e. whether the action was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. §

---

[12] As to formality, "[g]reater weight ordinarily is due to interpretations that result from a structured interpretive process as opposed to a catch-as-catch-can interpretive process." Id. at 81.

706(2)(a).[13] As explained above in the standard of review section, under this deferential standard, "[a]n agency's determination is arbitrary and capricious if the agency lacks a rational basis for making the determination or if the decision was not based on consideration of the relevant factors." Carcieri, 497 F.3d at 43. Departure from agency precedents embodied in prior adjudicative decisions can constitute an abuse of discretion if the reasons for the failure to follow precedent are not explained. See Shaw's Supermarkets, Inc. V. NLRB, 884 F.2d 34, 37 (1st Cir. 1989).

Chevron and Skidmore are not applicable to the claim before us because those standards are directed at whether the agency acted within its authority - statutory or regulatory. See Arent v. Shalala, 70 F.3d 610, 615-16 (D.C. Cir. 1995) (distinguishing between Chevron deference and APA's "arbitrary and capricious review" and explaining that while "Chevron is principally concerned with whether an agency has authority to act under a statute" the question of "whether the [agency's] discharge of that authority was reasonable . . . falls within the province of traditional arbitrary and capricious review under 5 U.S.C. § 706(2)(a)"). "When the question is not one of the agency's authority but of the reasonableness of its actions, the 'arbitrary and capricious' standard of the APA governs." New York Public

---

[13] This standard was explained by the Supreme Court in Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29 (1983).

Interest Research Group v. Whitman, 321 F.3d 316, 324 (2d Cir. 2003).

In the present case, River Street does not contend that the AAO acted outside the scope of authority delegated to it by statute in deciding to not credit River Street for depreciation amounts deducted from its net income. There is no question that the AAO has discretion to decide how to weigh relevant evidence in assessing a prospective employer's ability to pay a proffered wage. Rather, River Street claims that in departing from its prior precedents without explanation, the AAO exercised its undisputed discretion in this area in an arbitrary and capricious manner. This type of inquiry is governed by section 706(2)(a). Whitman, 321 F.3d at 324. Moreover, this is the standard that this Court has recently applied in reviewing discretionary decisions by CIS.[14] Royal Siam Corp., 484 F.3d at 148 (holding that CIS rejection of visa renewal application was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law). Thus, we will proceed to determine whether the AAO's decision was supported by a rational basis. Bowman, 419 U.S. at 290. We conclude that it was.

The AAO decision in this case adequately explained why amounts deducted for depreciation should not be added to River Street's net income. Usually, the AAO requires a prospective

---

[14] The AAO is the appeals unit of CIS and its decision constitutes the final decision of the CIS.

- 14 -

employer to evidence its ability to employ an alien skilled worker's wage through either copies of annual reports, federal tax returns, or audited financial statements. 8 C.F.R. § 204.5(g)(2). After examining River Street's federal income tax returns, the AAO determined that in 2001 and 2002, River Street's net income and net current assets were less than the proffered wage for Mohamed. The AAO also explained that it would not revert to its pre-2003 policy where depreciation was added to net income. The AAO recognized that a depreciation deduction is a systematic allocation of the cost of a tangible long-term asset and does not represent a specific cash expenditure during the year claimed. Furthermore, the AAO indicated that the allocation of the depreciation of a long-term asset could be spread out over the years or concentrated into a few depending on the petitioner's choice of accounting and depreciation methods. Nonetheless, the AAO explained that depreciation represents an actual cost of doing business, which could represent either the diminution in value of buildings and equipment or the accumulation of funds necessary to replace perishable equipment and buildings. Accordingly, the AAO stressed that even though amounts deducted for depreciation do not represent current use of cash, neither does it represent amounts available to pay wages.

We find that the AAO has a rational explanation for its policy of not adding depreciation back to net income. Namely, that the amount spent on a long term tangible asset is a "real" expense.

Furthermore, we find that the AAO consistently applied its position regarding depreciation. River Street concedes that beginning in 2003, the AAO no longer added amounts deducted for depreciation to net income to determine a petitioner's financial capacity to pay the proffered wage. Furthermore, River Street submitted several AAO non-precedential decisions which show that, since 2003, the AAO has consistently refused to add depreciation to net income. In addition to the AAO decisions submitted by River Street, this Court examined other AAO decisions that were issued after the 2003 change of policy. They are all consistent in that, in the usual course, depreciation is apparently no longer added to net income. E.g., 32 Immig. Rptr. B2-116 AAO Designation:B6 (Nov. 10, 2005); 33 Immig. Rptr. B2-1 AAO Designation:B6 (Sep. 16, 2005); 32 Immig. Rptr. B2-9 AAO Designation:B6 (Jan. 13, 2005); 31 Immig. Rptr. B2-8 AAO Designation:B6 (Dec. 30, 2004); 31 Immig. Rptr. B2-1 AAO Designation:B6 (Nov. 22, 2004); 28 Immig. Rptr. B2-7 (Aug. 6, 2003); 27 Immig. Rptr. B2-77 (Apr. 9, 2003); but see, e.g., 25 Immig. Rptr. B2-82 AAO Designation:B6 (May 7, 2002). These decisions lend ample support to the consistency displayed by the AAO in applying its policy regarding depreciation.

In sum, since the AAO has proffered a rational reason for its reversal in policy and because it has consistently applied that policy since 2003, we see no reason to interfere with the AAO's

change of policy regarding depreciation and its denial of River Street's employment based visa application.

## CONCLUSION

The judgment of the district court is **AFFIRMED.**