NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1909
_____

EMBASSY OF THE BLESSED KINGDOM OF GOD FOR ALL NATIONS CHURCH;
GOD'S EMBASSY CHURCH; MYKHALYK OLEKSANDR,

Appellants

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA;
SECRETARY OF THE UNITED STATES HOMELAND SECURITY;
DIRECTOR UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES
(USCIS); DISTRICT DIRECTOR UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES (USCIS)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 13-cv-41)
District Judge:  Hon. Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2014

Before:  RENDELL, JORDAN, and NYGAARD, *Circuit Judges*.

(Filed: November 24, 2014)
_____

OPINION*
_____

_____
      * This disposition is not an opinion of the full court and, pursuant to I.O.P 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

This appeal is brought by Embassy of the Blessed Kingdom of God for All Nations Church located in Ukraine ("Embassy Ukraine"), God's Embassy Church located in Philadelphia, PA ("Embassy Philadelphia"), and Pastor Oleksandr Mykhaylyk (collectively, the "Appellants"). They seek review of the orders of the United States District Court for the Eastern District of Pennsylvania denying their motion for summary judgment under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*, and dismissing their due process claim under the Fifth Amendment. We will affirm.

## I.    Background

In May 2006, Mykhalyk, a Ukrainian citizen, entered the United States on a temporary visa obtained for him by his then-employer, God's Embassy Church located in Sacramento, CA ("Embassy Sacramento").[1] Mykhalyk's mission with Embassy Sacramento was to establish and develop a second church, Embassy Philadelphia, which, like Embassy Sacramento, would serve as an extension of Embassy Ukraine in the United States. Around September 3, 2009, Embassy Sacramento filed on Mykhalyk's behalf a Form I-360 petition for a religious worker visa. Such a visa is available to a religious worker who, for at least two years immediately preceding the time of the visa application,

---

[1] The Appellants contend that Oleskandr arrived in the United States around April 7, 2008, which is the date the District Court adopted in its opinion. The record shows, however, that Mykhalyk's temporary visa was issued in April 2006, he has United States tax forms from 2006, and his I-360 application says that he arrived in the United States in May 2006.

"has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States."[2] 8 U.S.C. § 1101(a)(27)(C)(i).

After the petition was filed, the United States Citizenship and Immigration Services ("USCIS") investigated Mykhalyk's claim that he was working for Embassy Sacramento and conducted a site visit at the address provided on the petition. The investigating officer found that the facility was being used by several different businesses and noted that there were "no signs or other items posted identifying the petitioning organization at the site." (Vol. 2 at 23.) The USCIS officer attempted without success to contact both Mykhalyk and Embassy Sacramento to seek further direction. Because it was unable to verify Mykhalyk's employment with Embassy Sacramento or the church's eligibility as a bona fide nonprofit organization, USCIS sent a notice of intent to deny the I-360 petition to Embassy Sacramento on August 11, 2010.

Embassy Sacramento responded to that notice and explained that Mykhalyk's actual place of employment was at its "daughter church," Embassy Philadelphia. USCIS then conducted another site visit on September 27, 2010, this time to Embassy Philadelphia. Again, there were no signs showing that the listed address was used as a church, but the investigating officer was able to get in contact with Mykhalyk through his

---

[2] Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*, up to 5,000 visas are available to "special immigrants" each year. 8 U.S.C. § 1153(b)(4). One category of immigrants eligible for such a visa is religious workers. *Id.* § 1101(a)(27)(C). To establish religious worker status, either the alien or his prospective U.S. employer must petition the United States Citizenship and Immigration Services by filing Form I-360. 8 C.F.R. § 204.5(m)(6). "An applicant or petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication." 8 C.F.R. § 103.2(b)(1). The burden of proving eligibility rests with the petitioner. 8 U.S.C § 1361.

wife.  Mykhalyk asserted that he had been engaged in missionary training, counseling, and youth programs in Philadelphia but did not provide any confirming evidence that his activities were related to his church.  During the interview, the USCIS officer also inquired as to Embassy Philadelphia's status as a nonprofit organization.  Although Embassy Sacramento had submitted with its petition an IRS 501(c)(3) letter documenting its tax-exempt status, Mykhalyk told the officer that he had obtained a second IRS 501(c)(3) letter for Embassy Philadelphia by establishing it as a subordinate of the International Congress of Churches and Ministers ("ICCM") – an organization that does not appear to be associated with Embassy Ukraine or Embassy Sacramento.

On November 9, 2011, USCIS issued a second notice of intent to deny the I-360 petition, citing the lack of evidence showing a connection between Mykhalyk's work and Embassy Philadelphia and between Embassy Philadelphia and Embassy Sacramento. USCIS also noted that it was unclear why Mykhalyk would obtain a second IRS 501(c)(3) form from a third party, when the church he was supposedly affiliated with had already established its tax-exempt status.  Embassy Philadelphia – not Embassy Sacramento – responded to the notice by submitting an amended I-360 petition that substituted Embassy Philadelphia for Embassy Sacramento as the petitioning organization.  Embassy Philadelphia also included a November 28, 2011 letter from Embassy Ukraine saying that it no longer recognized Embassy Sacramento as a member of its network of churches and that Embassy Philadelphia was the "full 'Successor in Interest'" of Embassy Sacramento's relationship with Embassy Ukraine.  (Vol. 2 at 156.)

4

On March 21, 2012, USCIS denied Embassy Sacramento's petition. The agency found that Embassy Sacramento had not established either that Mykhalyk had been or would be working for Embassy Sacramento or that a valid connection existed between Embassy Sacramento and Embassy Philadelphia. Shortly thereafter, an entity identifying itself as "God's Embassy Church" submitted a Notice of Appeal to the USCIS Administrative Appeals Office ("AAO"), arguing that the USCIS improperly denied its petition. The appeal form did not indicate whether "God's Embassy Church" referred to Embassy Sacramento or Embassy Philadelphia or some other church, so it was unclear who was filing the appeal. The form was, however, signed by Tatiana Aristova, the attorney currently representing the Appellants in this action, and the notice of appearance accompanying the administrative appeal was executed by Mykhalyk on behalf of "The Embassy of God's Church" with an address in Philadelphia.

The AAO rejected the appeal[3] and, in the alternative, summarily dismissed it. The AAO explained that Ms. Aristova did not have authority to file the appeal because she did not represent Embassy Sacramento, the petitioning organization. Even if the appeal had been properly filed, the AAO stated that it would have been summarily dismissed because the evidence demonstrated that Mykhalyk was not going to be working for Embassy Sacramento in the future and that Embassy Sacramento was no longer affiliated with Embassy Philadelphia. The AAO also explained that it would not recognize the substitution of Embassy Philadelphia for Embassy Sacramento as the petitioner because

_____

[3] We understand the AAO's use of the term "reject" when describing its action on the administrative appeal to mean that, in effect, it dismissed the appeal for lack of standing, not that it refused to accept filing of the appeal.

5

petitioner eligibility had to be established at the time of filing and material changes to correct deficient petitions after filing are not permitted.

The Appellants then filed suit against the government[4] in the United States District Court for the Eastern District of Pennsylvania, seeking judicial review under the APA, relief under the Fifth Amendment's Due Process Clause, and a writ of mandamus. The District Court dismissed the petition for a writ of mandamus and the Appellants do not appear to challenge that ruling.[5] The Court also dismissed the due process claim under Federal Rule of Civil Procedure 12(b)(6). On March 20, 2014, the District Court denied the Appellants' motion for summary judgment on the APA claim and granted the cross-motion for summary judgment filed by the government. The Appellants have timely appealed both the dismissal of their due process claim and the summary judgment against them based on the APA.

---

[4] This action was brought against United States Attorney General Eric Holder, Secretary of the United States Department of Homeland Security Rand Beers, USCIS Director Alejandro Mayorkas, and USCIS District Director Evangelia Klapakis. We refer to the defendants collectively as the "government."

[5] The Appellants state in their Opening Brief that USCIS's denial of the I-360 petition violated the Manadmus Act, but they do not present arguments in support of that claim. Thus, we do not further address the request for a writ.

## II.    Discussion[6]

The Appellants contend that the District Court erred in saying the AAO was correct to reject and dismiss their administrative appeal. None of their arguments is meritorious but, to dispose of the appeal, it suffices to observe that the rejection of the administrative appeal was fully justified.

The APA permits judicial review of "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. An agency's action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Our review under this standard is "highly deferential" and "presume[s] the validity of agency action." *SBC Inc. v. Fed. Comm. Com'n*, 414 F.3d 486, 496 (3d Cir. 2005) (citations omitted) (alteration in original). A decision is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Because the AAO's decision constituted the "final agency action" subject to judicial review, we evaluate whether the AAO's rejection of the Appellants'

---

[6] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have appellate jurisdiction pursuant to 28 U.S.C. §1291. We exercise plenary review over a district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010). We review de novo the district court's grant of summary judgment. *Pa. Dep't of Public Welfare v. Sebelius*, 674 F.3d 139, 146 (3d Cir. 2012).

administrative appeal was arbitrary and capricious. 5 U.S.C. § 704; *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 117 n.14 (1st Cir. 2009) ("The AAO is the appeals unit of [US]CIS and its decision constitutes the final decision of the [US]CIS.").

The applicable regulations authorize only an "affected party" to file an appeal from the denial of an I-360 visa petition and require the AAO to reject any appeal that is "improperly filed." 8 C.F.R. § 103.3(a)(2)(i) ("The affected party must submit an appeal on Form I-290B."); *id.* § 103.3(a)(2)(v)(A)(1) ("An appeal filed by a person or entity not entitled to file it must be rejected as improperly filed."). An "affected party" is "the person or entity with legal standing in a proceeding" and "does not include the beneficiary of a visa petition." *Id.* § 103.3(a)(1)(iii)(B). The Appellants argue that the administrative appeal was properly filed because the appeal authorization form associated with the appeal was signed on behalf of Embassy Philadelphia, and Embassy Philadelphia is an "affected party." But Embassy Sacramento, not Embassy Philadelphia, is the only affected party, according to the applicable regulations. As the petitioner whose visa application was denied, Embassy Sacramento is the sole employer with legal standing to file the appeal. Because Embassy Sacramento did not file the appeal, the AAO was correct to reject it as improperly filed.[7]

---

[7] Even assuming that their appeal had been properly filed, however, the Appellants have not shown that the AAO's dismissal was arbitrary and capricious. The Appellants acknowledge that Mykhalyk was not and will not be employed by Embassy Sacramento, and that during the visa application process, Embassy Sacramento and Embassy Philadelphia ceased all affiliation. They contend based solely on the November 28, 2011 letter from Embassy Ukraine, that Embassy Philadelphia is the "full 'Successor in Interest'" of Embassy Sacramento in terms of its affiliation with Embassy Ukraine. But the AAO's interpretation of the applicable regulations to prohibit employer substitutions

## III.   Conclusion

We will affirm the District Court's grant of the government's summary judgment motion and the denial of the Appellants' summary judgment motion with respect to the APA claim, and we will likewise affirm the District Court's dismissal of the Appellants' due process claim.

---

is not "plainly erroneous or inconsistent with the regulation[s]," *Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 880 (2011) (citation and internal quotation marks omitted), and is thus entitled to deference, *id.* Pursuant to 8 C.F.R. § 103.2(b)(1), petitioners must establish eligibility for visa petitions at the time the visa petitions are filed. Thus, "a petitioner may not make material changes to a petition that has already been filed in an effort to make a deficient petition conform to [USCIS] requirements." *In re Izummi*, 22 I.&N. Dec. 169, 176 (BIA 1998). Here, the AAO concluded that the substitution of Embassy Philadelphia for Embassy Sacramento as the petitioning employer was a prohibited "material change." That interpretation is not arbitrary or capricious.

The due process claims would also fail. The Appellants say that the denial of their I-360 petition deprived them of their liberty and property interests in the proper adjudication of their application. Again, however, the AAO did not act arbitrarily and capriciously when it dismissed the appeal. The Appellants also argue that USCIS's procedural process was insufficient because it issued its notice of intent to deny "years after the petition was filed," thus violating their procedural due process rights. (Appellants' Br. at 31.) The reality, however, is that USCIS issued its first notice less than a year after the petition was filed, after a failed site visit to Embassy Sacramento. It issued its second notice a little over a year later, after conducting a second site visit to Embassy Philadelphia. The Appellants had the opportunity to submit additional evidence after each USCIS notice – which provided detailed explanations for the denial – and they had the opportunity to move for reconsideration after the petition was denied.